Filed 2/3/23  P. v. Deaton CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C095776 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF20211506) |
| v. | |
| JEREMY DEATON, | |
| Defendant and Appellant. | |

Defendant Jeremy Deaton contends the trial court's imposition of out-on-bail enhancements under Penal Code[1] section 12022.1 were not supported by substantial evidence, because he was not released on "bail" or on his "own recognizance" (O.R.), the forms of release identified in the statute. Rather, defendant was cited and released under agreements to appear that referenced section 853.6, a procedure whereby a person

---

[1] Undesignated statutory references are to the Penal Code.

1

arrested for a misdemeanor is released upon being served with a written notice to appear and the person gives their written promise to appear. The agreements, however, listed both felony and misdemeanor charges pending against defendant. With one exception, the agreements also referred to Yolo County's emergency COVID-19 bail schedule, which called for most misdemeanors and felonies to be "[p]resumptively cite and release" with bail set at "$0."

Section 12022.1 provides that "if one commits a felony while released on bail or O.R. pending final resolution of an earlier felony charge, he shall serve 'two years in state prison' additional and consecutive to any other prison term imposed for either offense." (*In re Jovan B.* (1993) 6 Cal.4th 801, 808-809 (*Jovan B.*).) Defendant contends that section 12022.1 requires strict compliance with the formal requirements of bail or O.R. procedures before a section 12022.1 enhancement may be imposed. We disagree. As this court held in an analogous situation, substantial compliance with requirements material to the objective of the statute is sufficient. (See *People v. Carroll* (2014) 222 Cal.App.4th 1406, 1412 (*Carroll*).) The objective of section 12022.1 is to prevent recidivism by a defendant who has been released with charges pending. The agreements in question substantially complied with the objective of the statute. Each agreement defendant signed informed him of the specific felony charges pending against him, set a date and place where he must appear to answer the charges, and warned him that if he failed to appear, a warrant would be issued for his arrest. The objective of the statute was met by defendant's written agreement that he was released with felony charges pending, which put him on notice of his potential repeat offender status should he commit new felonies while released.

Alternatively, defendant argues that the trial court should have dismissed all enhancements but one, pursuant to recently enacted section 1385, subdivision (c)(2)(B), which provides that where "[m]ultiple enhancements are alleged in a single case . . . all enhancements beyond a single enhancement shall be dismissed." This subdivision sets

2

forth a mitigating circumstance—one of nine enumerated in the statute—that weighs in favor of dismissal, and which serves to guide the sentencing court in the exercise of its discretion. The subdivision is not a command. It does not eliminate the court's discretion whether to dismiss an enhancement, which is expressly preserved in subdivision (c)(1) and (2). Accordingly, the trial court did not abuse its discretion in imposing a sentence that includes more than one enhancement.

Lastly, we agree with defendant and the People that concurrent sentences imposed for certain possession for sale of controlled substance counts were based on the same conduct as counts for the transportation of the same substance on the same occasion and should have been stayed under section 654.

With that modification, we affirm the judgment.

BACKGROUND

The factual details of defendant's offenses are not pertinent to disposition of this appeal. In sum, defendant was charged with a number of drug offenses in 2020 and 2021. On five separate occasions in a span of less than eight months—July 31, 2020, December 31, 2020, January 16, 2021, February 6, 2021, and February 17, 2021—defendant was released after signing an "Agreement to Appear (853.6 P.C.)," which listed a court date and department of the superior court for his appearance, and included the statement: "I promise to appear on the date and time indicated above. I understand that if I fail to appear as promised a warrant will be issued for my arrest (978.5(4) P.C.) and I may be charged with a misdemeanor pursuant to section 853.7 P.C." Each agreement itemized specific felony and misdemeanor charges pending against defendant.

With the exception of the December 31, 2020 agreement, the agreements concluded with a comment: "COVID-19 EMERGENCY BAIL SCHEDULE RELEASE." Yolo County's emergency bail schedule, effective April 13, 2020, states that both misdemeanors and felonies "shall have bail set at $0" and be "[p]resumptively

3

cite and release," with the exception of certain enumerated misdemeanors and felonies, none of which were charged against defendant.

In a consolidated information, defendant was charged with transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a); counts 1, 5, 9, 11, 15 & 19), possessing methamphetamine for sale (Health & Saf. Code, § 11378; counts 2, 6, 10, 12, 14, 16 & 20), transporting heroin (Health & Saf. Code, § 11352, subd. (a); counts 3 & 17), possessing heroin for sale (Health & Saf. Code, § 11351; counts 4, 13 & 18), misdemeanor possession of controlled substance paraphernalia (Health & Saf. Code, § 11364, subd. (a); count 7), misdemeanor possession of marijuana for sale (Health & Saf. Code, § 11359, subd. (b); count 8), and failure to appear (§ 1320, subd. (b); count 21). The information included six allegations that defendant committed the charged felony offenses while released on bail or on his own recognizance. (§ 12022.1, subd. (b).)

Defendant waived his right to jury trial on the failure to appear charge (count 21) and the out-on-bail enhancement allegations.

On September 23, 2021, a jury deadlocked on count 1, acquitted defendant on counts 2 and 8, and found him guilty on the remaining counts other than count 21. The trial court declared a mistrial on count 1 and dismissed that count on the prosecution's motion. The court also dismissed the first out-on-bail enhancement allegation on the parties' joint request.

At the bench trial, the prosecutor introduced defendant's agreements to appear as evidence in support of the out-on-bail enhancements. Defense counsel argued that defendant's signed agreements to appear did not comply with section 12022.1, notwithstanding the reference to the emergency bail schedule setting bail at $0. The prosecutor countered that defendant was released in accordance with the emergency bail schedule, pointing out that section 12022.1 does not require that bail be set at a particular amount. Alternatively, the prosecutor argued that the agreements substantially complied

with section 1318 and were the equivalent of an O.R. release for purposes of section 12022.1.

The trial court found the out-on-bail enhancements (§ 12022.1) to be true, reasoning that "zero dollar bail" is a "necessary fiction" due to COVID-19, but is still "a bail," and ordinary bail procedures were "superfluous." However, the court found that the People had not established substantial compliance with the procedures required for a failure to appear charge (§ 1320) and dismissed count 21.

The court imposed a split sentence of 11 years two months in county jail and four years 10 months under mandatory supervision, for an aggregate sentence of 16 years. The sentence was composed of: (1) the middle term of four years on count 3 and consecutive terms of one-third the middle term on counts 5, 9, 11, 13, 14, 15, 17, and 19; (2) three or four years concurrent on the remaining counts; and (3) two consecutive two-year terms on two of the out-on-bail enhancements, striking the other three in the interests of justice.

Defendant filed a timely notice of appeal.

DISCUSSION

I

*Section 12022.1*

Defendant contends his section 12022.1 out-on-bail enhancements should be reversed because there is insufficient evidence that he was released on "bail" or on his "own recognizance."

While defendant invokes the substantial evidence standard of review, this case involves application of section 12022.1 to uncontested evidence, i.e., the release agreements defendant signed. " ' "It is well settled that the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law . . . which is subject to de novo review on appeal." ' " (*Carroll, supra,* 222 Cal.App.4th at p. 1412.)

Section 12022.1 defines a " '[p]rimary offense' " to mean "a felony offense for which a person has been released from custody on bail or on his or her own recognizance," and a " '[s]econdary offense' means a felony offense alleged to have been committed while the person is released from custody for a primary offense." (§ 12022.1, subd. (a)(1), (2).) "Any person arrested for a secondary offense that was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years, which shall be served consecutive to any other term imposed by the court." (*Id.*, subd. (b).)

Defendant maintains that section 12022.1 requires strict compliance with the statutes governing release on bail (§ 1268 et seq.) or O.R. (§§ 1270, 1318). Bail procedures include, for example, "acceptance, by a competent court or magistrate, of the undertaking of sufficient bail for the appearance of the defendant." (§ 1269.) O.R. release requires the defendant's written promise, inter alia, not to leave the state without the court's permission (§ 1318, subd. (a)(3)), as well as the defendant's agreement to waive extradition if the defendant fails to appear and is apprehended outside the state (*Id.*, subd. (a)(4)). Defendant argues that failure to follow such procedures precludes imposition of out-on-bail enhancements.

Defendant relies on *People v. Hernandez* (2009) 177 Cal.App.4th 1182, where the appellate court rejected the People's argument that the defendant's release on an emergency pass to visit his ailing wife—an occasion he used to abscond and commit a new felony—was the " 'functional equivalent' " of an O.R. release (*id.* at pp. 1190-1191). The court held that the defendant's "release from custody failed to meet the statutory criteria set forth in section 1318 for an O.R. release."[2] (*Hernandez,* at p. 1190.)

---

[2] Section 1318 provides: "(a) The defendant shall not be released from custody under an own recognizance until the defendant files with the clerk of the court or other person authorized to accept bail a signed release agreement which includes: [¶] (1) The

6

Therefore, "the enhancement findings under section 12022.1 were not supported by the evidence and must be reversed." (*Id.* at p. 1192; see also *People v. Mohammed* (2008) 162 Cal.App.4th 920, 933 [a defendant released without a signed release agreement that complies with § 1318 cannot be punished under § 1320 for failure to appear]; *People v. Jenkins* (1983) 146 Cal.App.3d 22, 27 [same].)

However, defendant acknowledges that in *Carroll* we disagreed with *Hernandez* and applied the substantial compliance doctrine in the context of a prosecution for failure to appear under section 1320 based on an O.R. release that did not strictly comply with section 1318. We held that substantial compliance with the terms of section 1318 is sufficient for a section 1320 prosecution and agreements omitting terms immaterial to the objective of section 1320 substantially complied with section 1318 as a matter of law. (*Carroll, supra*, 222 Cal.App.4th at p. 1412.) The agreements in question did not include terms specified in section 1318 that the defendant promise to obey all reasonable conditions imposed by a court or magistrate (§ 1318, subd. (a)(2)) or a promise not to leave the state (*Id.*, subd. (a)(3)). (*Carroll,* at p. 1413.) We held that " '[s]ubstantial compliance' means actual compliance in respect to the substance essential to every reasonable objective of the statute, as distinguished from mere technical imperfections of form." (*Id.* at p. 1421.) "The objectives of sections 1318 and 1320 are to ensure the accused's future appearance in court and to protect public safety." (*Ibid*.) In *Carroll*, the written agreements contained terms pertinent to those objectives, i.e., the defendant's

---

defendant's promise to appear at all times and places, as ordered by the court or magistrate and as ordered by any court in which, or any magistrate before whom the charge is subsequently pending. [¶] (2) The defendant's promise to obey all reasonable conditions imposed by the court or magistrate. [¶] (3) The defendant's promise not to depart this state without leave of the court. [¶] (4) Agreement by the defendant to waive extradition if the defendant fails to appear as required and is apprehended outside of the State of California. [¶] (5) The acknowledgment of the defendant that he or she has been informed of the consequences and penalties applicable to violation of the conditions of release."

promise to appear and the consequences of her failure to appear. (*Ibid.*) The omitted section 1318 terms were immaterial to the objectives of section 1320. (*Carroll,* at pp. 1421-1422.)

Undeterred, defendant argues the objectives of section 12022.1 require strict compliance with the formal requirements of "bail" or "own recognizance." We disagree. Substantial compliance with section 12022.1 to achieve the objectives of the statute does not depend on strict compliance with the terms and procedures of the particular form of release. "[T]he purpose and intent behind a section 12022.1 enhancement, generally speaking, is . . . to penalize *recidivist* conduct with increased punishment. Courts that have addressed the issue have uniformly agreed that the underlying purpose of section 12022.1 enhancements is to punish this particular form of recidivism with increased penalties." (*People v. McClanahan* (1992) 3 Cal.4th 860, 868; *People v. Lewis* (1986) 185 Cal.App.3d 923, 927 ["The purpose of section 12022.1 is to meet public concern over offenders who are arrested then allowed back on the street a short time later only to commit more crimes. . . . Section 12022.1 deters this conduct by enhancing the punishment of persons who commit new felonies while awaiting trial on an earlier felony"].) A written agreement signed by a defendant, as here, in which the defendant agrees he or she is released with specified felony charges pending and calls for the defendant to appear at a place and time to answer the charges or an arrest warrant will issue, contains the terms material to the objective of section 12022.1. The agreement serves to deter a defendant from committing new felonies, that is, becoming a repeat offender, by specifying the felonies already charged that defendant must answer. (See *People v. Watkins* (1992) 2 Cal.App.4th 589, 593 ["section 12022.1 seeks to deter the commission of new felonies by persons released from custody on an earlier felony"]; *People v. Warinner* (1988) 200 Cal.App.3d 1352, 1356 ["The increased penalties . . . are due to [the defendant's] status *as a repeat offender* and arise as an incident of the subsequent offense"].)

8

We find instructive the California Supreme Court's decision in *Jovan B.*, where the court held that for purposes of section 12022.1 a juvenile's " 'house arrest' " was the "functional equivalent of O.R. release in an adult proceeding." (*Jovan B., supra,* 6 Cal.4th at p. 815.) The court noted that the appellate court had expressed concern that a juvenile is not entitled to bail and never released on his " 'own' " recognizance, but rather freed to the custody of a guardian or parent. (*Id.* at pp. 814-815.) However, a juvenile's home release places substantial responsibility on the released person. (*Id.* at p. 815.) A juvenile's "defiant commission of a new felony while released . . . is exactly the kind of opportunistic recidivism which warrants enhanced punishment under section . . . 12022.1." (*Ibid.*) The court concluded that "by committing a new felony while subject to 'house arrest' release on an earlier charge, the minor brought himself within the terms of the bail/O.R. enhancement." (*Ibid.*) In *Jovan B.*, the court was not concerned that the formalities of bail or O.R. release were not observed, focusing rather on the circumstance that the released juvenile committed "opportunistic recidivism" on release, which warranted punishment under section 12022.1.

Defendant advances a number of arguments why the substantial compliance doctrine should not be applied to section 12022.1. First, defendant argues the doctrine does not apply because the statutory objective is to punish recidivism while released on bail or one's own recognizance, because the statute uses the words "on bail" or "own recognizance." Plainly, the court in *Jovan B.* did not find dispositive that a juvenile offender is not released on bail or O.R. To be sure, "on bail" and O.R. are the most common forms of release, but the facts of this case illustrate how the objective of the statute is served by other forms of release. Section 853.6 is a cite-and-release procedure where a person arrested for a misdemeanor is released upon being served with a written notice to appear. (See *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 760.) Here, the agreements to release that referred to section 853.6 were evidently adapted during the COVID-19 pandemic, which rendered formal bail and O.R. procedures

impractical, if not impossible. The comments section at the bottom of the agreement referred to the county COVID-19 emergency bail schedule, which specified that both misdemeanors and felonies were "[p]resumptively cite and release" and set bail at "$0."[3] Thus, the county adopted a cite-and-release/no bail policy for most felonies and misdemeanors. Accordingly, the agreements listed felonies and misdemeanors in the pending charges, along with a defendant's promise to appear to answer the charges. Under the substantial compliance doctrine, these release agreements furthered the statutory objective of section 12022.1 to deter recidivism by specifying the charges pending, thereby putting a defendant on notice that any additional crime committed on release would constitute punishable recidivism.

Next, defendant contends that the substantial compliance doctrine would raise constitutional doubt regarding the due process right to fair notice if section 12022.1 were not limited to release on bail or O.R., because defendants would have to guess whether the enhancement applied to a new criminal offense. Not so. Defendant received fair notice that committing new felonies while on release would constitute recidivism in light of the existing charges specified. There was no ambiguity that defendant would be a repeat offender if he committed any new felonies and would be subject to punishment as a result. (*People v. Warinner, supra*, 200 Cal.App.3d at p. 1356.)

Defendant also invokes the rule of lenity—"that a criminal statute must be interpreted to favor the criminal defendant," which applies " ' " 'only if two reasonable interpretations of the statute stand in relative equipoise.' " ' " (*Carroll, supra*, 222 Cal.App.4th at p. 1422.) We reject as unreasonable defendant's construction that, unless formal bail and O.R. procedures immaterial to the objectives of section 12022.1 have been followed, he can sign a release agreement listing multiple felony charges and

---

[3] Defendant notes that one of the five agreements did not include a comment section, but that was evidently for lack of space as the agreement listed 14 pending charges.

commit further crimes without the consequences visited upon a repeat offender under the statute.

Defendant further argues that the substantial compliance doctrine cannot be applied in this case because the sheriff made no effort to apply the requirements of a formal release on bail or O.R., but released defendant under the cite-and-release procedure of section 853.6. As we have already explained, the agreements were nominally under section 853.6 but listed felony charges pending and referenced a COVID-19 emergency bail schedule that called for presumptive release for both misdemeanors and felonies. In so doing, the agreements substantially complied with section 12022.1, in that they listed the pending charges and set a date and time for defendant to respond to the charges, putting defendant on notice that committing further crimes would constitute recidivism.

Lastly, defendant offers essentially duplicative arguments that substantial evidence does not show that the agreements in this case were in strict *or* substantial compliance with section 12022.1 because they omitted formal bail or O.R. procedures. What defendant omits is an explanation why, for example, a bail bond (§ 1269) or promise not to leave the state (§ 1318, subd. (a)(3)) is material to the objective of section 12022.1 to deter a defendant released with felony charges pending from committing new felonies.

We conclude the trial court did not err in finding the section 12022.1 enhancements true and imposing two-year terms for each enhancement under the statute.

II

*Section 1385*

Defendant contends that we should reverse the sentence on the second of the two section 12022.1 out-on-bail enhancements imposed under recently amended section 1385, subdivision (c)(2)(B). Subdivision (c)(2)(B) enables a court, when exercising its discretion, to dismiss all but one of multiple charged enhancements in a single case. Defendant argues that this subdivision mandates dismissal of all but one enhancement

11

where multiple enhancements are alleged, as here. We disagree that this subdivision deprives the sentencing court of discretion whether to dismiss an enhancement. Therefore, the trial court did not err in imposing sentence on both enhancements.

In sentencing, defense counsel requested that the trial court dismiss all but one of the section 12022.1 out-on-bail enhancements under section 1385. Ultimately, the court struck three of the five enhancements in the interests of justice and imposed a consecutive two-year sentence for each of the two remaining enhancements. The court stated that it arrived at this result by balancing defense counsel's argument that "there may be some addiction issues that [defendant] is dealing with" against the prosecutor's point that "[i]t's not as if [defendant] has no agency whatsoever or responsibility for his actions."

We review the trial court's refusal to dismiss an enhancement under section 1385 for abuse of discretion, which in this case depends on the scope of that discretion under the statute, a question of statutory interpretation that we review de novo. (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490.)

"In 2021, the Legislature enacted Senate Bill No. 81 (2021-2022 Reg. Sess.) . . . , which amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice. (Stats. 2021, ch. 721, § 1.)" (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.) These factors were set forth in subdivision (c)(2) of section 1385. (*Sek,* at p. 674, fn. 7.)

Subdivision (c)(1) of section 1385 as amended provides: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."

Subdivision (c)(2) of section 1385 provides in relevant part: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in paragraphs (A) to (I) are present. Proof of the presence of one or more of these

12

circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."[4]

Pertinent here, subdivision (c)(2)(B) of section 1385 provides: "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed."

Subdivision (c)(7) of section 1385 provides: "This subdivision shall apply to all sentencings occurring after January 1, 2022." Defendant was sentenced on February 12, 2022, therefore subdivision (c) of section 1385 applies.

Defendant contends that subdivision (c)(2)(B) of section 1385 mandates dismissal of all but one enhancement, because, unlike the other factors enumerated in paragraphs (A) to (I), the Legislature singled out two parts of the subdivision for "special treatment" by including the language " 'shall be dismissed.' " These claimed exceptions are subdivision (c)(2)(B) and (C) ["The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed"].) Defendant argues that these parts of the subdivision are an exception to the sentencing court's discretion whether to dismiss an enhancement.

---

[4] Section 1385, subdivision (c)(2)(A)-(I) provides: "(A) Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of Section 745. [¶] (B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] (C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed. [¶] (D) The current offense is connected to mental illness. [¶] (E) The current offense is connected to prior victimization or childhood trauma. [¶] (F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5. [¶] (G) The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case. [¶] (H) The enhancement is based on a prior conviction that is over five years old. [¶] (I) Though a firearm was used in the current offense, it was inoperable or unloaded."

13

We disagree with this reading of the statute. Subdivision (c)(1) and (2) of section 1385 expressly refer to the sentencing court's discretion in determining whether to dismiss an enhancement. Subdivision (c)(1) provides that a sentencing court must dismiss an enhancement "if it is in the furtherance of justice to do so." This provision accords the trial court general discretion to determine whether dismissal of an enhancement is "in the furtherance of justice." Subdivision (c)(2) directs the trial court in "exercising its discretion" to "consider and afford great weight to evidence" the defendant offers showing that "any of the mitigating circumstances in subparagraphs (A) to (I) are present," adding that "[p]roof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." Read together, these phrases direct the trial court to give great weight to evidence of the presence of the enumerated circumstances and that such proof weighs greatly in favor of dismissing the enhancement. However, if the court finds dismissing the enhancement would endanger public safety, proof of a mitigating circumstance does not weigh greatly in favor of dismissal.

The language of subdivision (c)(1) and (2) cannot be reconciled with defendant's assertion that a court has no discretion when it comes to subdivision (c)(2)(B) and (C). Subdivision (c)(1) and (2) guide the exercise of discretion but do not eliminate it with respect to any of the "mitigating circumstances in subparagraphs (A) to (I)."

Defendant's argument that subdivision (c)(2)(B) and (C) are an exception to the court's discretion whether to dismiss an enhancement rests on the words "In this instance . . . shall." However, a more reasonable explanation is this language provides guidance to the sentencing court on how to exercise its discretion under this subdivision. In other words, if the court chooses to exercise its discretion under subdivision (c)(2)(B), all but one enhancement should be dismissed. This interpretation appears to be the way the sentencing court read these provisions, asking, "is not subsection (B), there, in

14

modification of subsection (3) above it? That is, first, there is the discretion at sentencing and nothing shall prevent the Court from exercising its discretion. And then this is if it chooses to exercise its discretion, then it is modified by subsection (B); that is, this is what it shall do if it's going to find that it wants to exercise its discretion?"[5]

In addition, in a letter to the Secretary of the Senate published in the Daily Journal, the bill's author, Senator Nancy Skinner, stated her desire "to provide some clarity on my intent" regarding certain provisions of the bill: " '[A]mendments taken on August 30, 2021 remove the presumption that a judge must rule to dismiss a sentence enhancement if certain circumstances are present, and instead replaces that presumption with a 'great weight' standard where these circumstances are present. *The retention of the word 'shall' in Penal Code § 1385(c)(3)(B) and (C) should not be read as a retention of the previous presumption language—the judge's discretion is preserved in Penal Code § 1385(c)(2).*' " (*People v. Lipscomb* (Dec. 29, 2022, A164755) ___ Cal.App.5th ___ [2022 Cal. App. Lexis 1064 at p. *20, fn. omitted] (*Lipscomb*).)[6]

Recently, *Lipscomb* and another appellate court came to the same conclusion as we do that subdivision (c)(2)(B) and (C) does not mandate dismissal of enhancements. In *People v. Walker* (2022) 86 Cal.App.5th 386 (*Walker*), the court held that "subdivision

---

[5] By "subsection (3)," the court was actually referring to subdivision (c)(2). In *Sek*, the court explained that "Senate Bill No. 81 appears to include a clerical error. The text of the law refers to certain subparagraphs (A) to (I) as part of subdivision (c)(2) of section 1385, but the text of the bill lists these subparagraphs under subdivision (c)(3). (Stats. 2021, ch. 721, § 1.)" (*People v. Sek, supra,* 74 Cal.App.5th at p. 674, fn. 7.) It appears that in discussing the new provisions of section 1385, the trial court and counsel were looking at the bill, not the law, probably because defendant's sentencing occurred just over a month after Senate Bill No. 81 became effective.

[6] This letter published before the bill became effective also contains the error identified in *Sek*, i.e., referring to subdivision (c)(2)(B) and (C) as subdivision (c)(3)(B) and (C), albeit the letter correctly referred to the judge's discretion being set forth in subdivision (c)(2). (*Lipscomb, supra,* ___ Cal.App.5th ___ [2022 Cal. App. Lexis 1064 at p. *20, fn. 4].)

(c)(2)(B) does not obligate trial courts to automatically dismiss all but one enhancement whenever a jury finds multiple enhancements to be true." (*Id.* at p. 396.) The court then posed the question: "So what *does* the phrase 'all enhancements beyond a single enhancement' mean when considered in its statutory context?" (*Id.* at p. 397.) The court answered its question as follows: "It means what it says—namely, that if a trial court determines that the mitigating circumstance of '[m]ultiple enhancements . . . in a single case' exists and that dismissal of the enhancements will not 'endanger public safety,' then the court's discretion to dismiss is somewhat constrained by the phrase's mandate that the court must dismiss all but one of those multiple enhancements. This reading of the text of section 1385 is the only one to give effect to the phrase's mandate of dismissing all but one enhancement *and* to give effect to the phrase's placement within section 1385 and the language that mitigating factors be given 'great' (but not dispositive) 'weight.' " (*Ibid*.) Thus, "[a]s the plain text of section 1385 repeatedly emphasizes, its purpose is to grant trial court *discretion* to dismiss enhancements," and encourage exercise of that discretion, not deprive the court of discretion. (*Id.* at pp. 397-398.)

In *Lipscomb*, the court similarly rejected the defendant's assertion that subdivision (c)(2)(C) embodies a mandatory command that a trial court must dismiss an enhancement that could result in a sentence longer than 20 years. The court said, "we must consider the statute as a whole, in particular its characterization of the fact that the enhancement could produce a sentence over 20 years as a 'mitigating circumstance' for the court to consider in the exercise of its 'discretion' to strike the enhancement—consideration which . . . does not apply at all where the court finds that striking the enhancement would endanger public safety." (*Lipscomb, supra,*___ Cal.App.5th ___ [2022 Cal. App. Lexis 1064 at p. *18].)

However, we part company with the court's determination in *Walker* that provisions of subdivision (c)(1) and (2) guiding the court's exercise of discretion "dictate that trial courts are to rebuttably presume that dismissal of an enhancement is in the

16

furtherance of justice (and that its dismissal is required) *unless* the court makes a finding that the resultingly shorter sentence due to dismissal 'would endanger public safety.' " (*Walker, supra,* 86 Cal.App.5th at p. 398.)  The *Walker* court derived a presumption from the "great weight" language in subdivision (c)(2).  (*Walker,* at pp. 398-399.)  However, as noted in the letter from the bill's author, the statute was amended to remove a presumption in favor of dismissal where mitigating circumstances exist and replace it with the "great weight" language.  (*People v. Lipscomb, supra*, ___ Cal.App.5th ___ [2022 Cal. App. Lexis 1064 at p. *18]; *id.* at p. *20 [in the letter, "the bill's author expressly indicated the intent that the judge's discretion to decide whether to impose the enhancement be preserved notwithstanding the 'shall be dismissed' language in section 1385, subdivision (c)(2)(C)"].)  We hesitate to engraft any form of presumption on to a statutory provision based on the "great weight" language the Legislature employed to replace a presumption.  Rather, we interpret subdivision (c)(1) of section 1385 as preserving the trial court's discretion to determine whether dismissal of an enhancement "in the furtherance of justice," regardless of whether the court makes a finding that dismissing the enhancement would endanger public safety.

In sum, the trial court did not err in dismissing three of the enhancements and sentencing defendant on the remaining two.  Subdivision (c)(2)(B) of section 1385 does not mandate that the trial court dismiss all but one enhancement.

III

*Section 654*

Defendant contends the trial court erroneously imposed concurrent sentences for the drug possession for sale counts paired with the drug transportation counts that involved the same drug on the same occasion, and therefore sentence on the possession charges should have been stayed under section 654.

The court sentenced defendant to: (1) four years on count 3 for transporting heroin on July 31, 2020, and three years concurrent on count 4 for possessing that drug

17

for sale on the same day; (2) one year consecutive on count 5 for transporting methamphetamine on July 31, 2020, and three years concurrent on count 6 for possessing that drug for sale on the same day; (3) one year consecutive on count 9 for transporting methamphetamine on December 31, 2020, and three years concurrent on count 10 for possessing that drug for sale on the same day; (4) one year consecutive on count 11 for transporting methamphetamine on January 6, 2021, and three years concurrent on count 12 for possessing that drug for sale on the same day; (5) one year consecutive on count 15 for transporting methamphetamine on February 16, 2021, and three years concurrent on count 16 for possessing that drug for sale on the same day; (6) one year four months consecutive on count 17 for transporting heroin on June 15, 2021, and four years concurrent on count 18 for possessing that drug for sale on the same day; and (7) one year consecutive on count 19 for transporting methamphetamine on June 15, 2021, and three years concurrent on count 20 for possessing that drug for sale on the same day.

Section 654 provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) "[Section 654] applies to the penal provisions of the Health and Safety Code. [Citation.] Under section 654, courts are generally precluded from imposing multiple punishment where a defendant engages in a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute." (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583.) Pertinent here, section 654 precludes separate punishment for the same act of transporting a controlled substance and possessing it for sale. (*People v. Tinker* (2013) 212 Cal.App.4th 1502, 1506; see also *People v. Lopez* (1992) 11 Cal.App.4th 844, 849-850 [§ 654 prohibits dual punishment of offering to sell cocaine and transporting cocaine for sale based on the same transaction]; *People v. Buchanan* (2016) 248 Cal.App.4th 603, 611 [§ 654 applies to possession for sale and transportation for sale of the same substance].)

18

In sum, the court imposed concurrent terms on counts 4, 6, 10, 12, 16, 18, and 20 for possession for sale paired with sentences on counts 3, 5, 9, 11, 15, 17, and 19 for transportation of the same drug on the same day. Defendant contends and the People agree, as do we, that the sentences imposed on counts 4, 6, 10, 12, 16, 18, and 20 must be stayed under section 654.

## DISPOSITION

The judgment is modified to stay under section 654 the sentences imposed on counts 4, 6, 10, 12, 16, 18, and 20. We direct the trial court to prepare an amended abstract of judgment reflecting these changes and forward a certified copy to the appropriate authority. The judgment as modified is affirmed.


　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　BOULWARE EURIE, J.


We concur:


　　/s/
MAURO, Acting P. J.


　　/s/
KRAUSE, J.

19